**E-FILED**
Monday, 04 May, 2009  05:37:35 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| GENE A. MUTTER and<br>LEONARD M. RICE,<br><br>        Plaintiffs,<br><br>vs.<br><br>GLENN SANDERS, individually and in<br>his official capacity as a conservation<br>officer for the Illinois Department of<br>Natural Resources; and MATT LENTZ,<br>individually and in his official capacity<br>as a conservation officer for the Illinois<br>Department of Natural Resources,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  No. 06-3259<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

OPINION

RICHARD MILLS, U.S. District Judge:

On the evening of November 8, 2005, an all-white deer[1] was shot and

killed outside Pittsfield in Pike County, Illinois.

This is illegal in Illinois.

The Plaintiffs were criminally charged, tried at bench and acquitted.

---

[1]The parties at times refer to the animal as "an albino deer," although the
statute uses only the term "all-white whitetail deer." See 520 ILCS 5/2.24.

All-white whitetail deer are protected by Illinois law and it is unlawful to knowingly hunt, shoot, pursue, lure, kill, destroy, capture, gig or spear, trap or ensnare, or harass an all-white deer, or attempt to do so.  See 520 ILCS 5/2.24; 520 ILCS 5/1.2o.  Defendants Glenn Sanders, a Conservation Police Sergeant, and Conservation Police Officer Matt Lentz investigated the killing for the Illinois Department of Natural Resources.  Plaintiffs Gene A. Mutter and Leonard "Mark" Rice were arrested and cited for illegally transporting bows, unlawful taking of protected wildlife, and wanton waste of wildlife.

Following a bench trial in State court, Mutter and Rice were found not guilty of the offenses of illegal taking of an all-white deer and killing protected wildlife without retrieving it.  The Pike County State's Attorney dismissed the charge of possession of an uncased bow in a vehicle.

## I. INTRODUCTION

The Plaintiffs filed this suit pursuant to 42 U.S.C. § 1983 against Sanders and Lentz, alleging that one or both of the Defendants violated their rights under the Fourth, Fifth and Fourteenth Amendments, by

subjecting them to unlawful interrogation, detention, arrest and deprivation of property. They also assert two state law claims for false arrest and imprisonment and malicious prosecution.

The Defendants contend that they are entitled to summary judgment for several reasons: (1) Lentz was not personally involved in the complained-of constitutional violations[2]; (2) the Plaintiffs have not asserted a constitutional violation relating to their "unlawful interrogation" claim; (3) Sanders had probable cause for the Plaintiffs' arrest and detention; (4) the Plaintiffs' property was lawfully seized; (5) Mutter's vehicle was lawfully searched; and (6) the Defendants are entitled to qualified immunity because their alleged conduct was not clearly established to be violative of the Plaintiffs' constitutional rights. The Defendants also assert that they are entitled to summary judgment on the Plaintiffs' state law claims.

## II. BACKGROUND

On November 8, 2005, Timothy Light was hunting in an area near

---

[2]The Plaintiffs acknowledge that Lentz is entitled to be dismissed from this litigation because he was not personally involved in the alleged constitutional violations.

3

Pittsfield, Illinois, where an all-white deer was shot.  Light observed the shooting from a nearby deer stand and reported the incident to his outfitter, Gearold Smith, who forwarded information to law enforcement directly and through his son Todd Smith.  Soon after Light reported the shooting to him, Gearold Smith observed a vehicle which generally matched the description given to him by Light.  The truck was less than one mile away from the field where the deer was shot.  Mutter is the owner of a 2006 black, Ford F-250, extended cab, diesel pick-up truck with cab lights.  Mutter and Rice occupied that truck on that evening.

The truck was parked in front of a residence on Dutton Street. Sanders observed through the vehicle's windows two bows that appeared to be uncased or not otherwise rendered inoperable.  Before approaching the house, Sanders observed mud on the tires and sides of the vehicle.  Mutter told Sanders that he and Rice had spent the afternoon and evening deer hunting, and later rode around looking for deer.

The Plaintiffs, who are both from Pennsylvania, stated that they traveled back into Pittsfield by going by the "ag building."  The building

that houses what was previously called the U.S. Department of Agriculture, now the U.S. Farm Services Agency, is located on the west side of Pittsfield, just south of the field where the deer was shot.  According to Rice, however, he and Mutter had driven by the "ag building" on the east side of Pittsfield en route to their hunt site.  They did not pass the "ag building" on the way back from the hunt.  The Plaintiffs claim that they drove directly from the hunt site to the residence on Dutton Street, where they rented the basement along with two other hunters.  Sanders testified that when asked how they "got into town," the Plaintiffs told him they went by the "ag building," which Sanders understood to be the building on the west side of  Pittsfield, near the area where the white deer was shot.

The Plaintiffs allege that the Illinois State Police inquired about a number of things, including the ownership of the truck.  The troopers indicated that the truck was involved in a crime and that a conservation officer was en route.  Trooper Stambaugh stated that although he was aware that a .22 rifle had been used in the shooting of the white deer, he could not locate such a rifle.  He did not find a muzzle loader.  The troopers also

found antlers from Mutter's deer kill the previous day.  Sanders arrived at the Dutton Street residence about twenty minutes after the troopers.

Upon Sanders's entry into the basement, the atmosphere dramatically changed.  Sanders told Mutter, "You come upstairs with me," and both Plaintiffs submitted to his authority.  The Plaintiffs allege that Sanders told each Plaintiff that the other had confessed to having a rifle, though neither had a gun.  Sanders claimed that he had found blood on the inside tailgate during the search.  It retained some moisture.  Mutter advised Sanders that he had shot a deer the day before.

Following the interrogation, Sanders searched Mutter's truck.  According to Sanders, when he initially arrived at the location, by using his flashlight he noticed a spotlight, which is not illegal in Illinois, on the passenger side on the floor board.  He claimed to see two unlocked bows in plain view in the back seat.  Sanders found no guns in the truck.

Following the search and a telephone call from Lentz, Sanders formally placed Mutter and Rice under arrest for the three offenses.  The Plaintiffs were handcuffed and transported to the Pike County Jail where they were

6

booked.

## III. ANALYSIS

The Plaintiffs' complaint includes claims under sections 1983 and 1988, by which they allege that their rights were violated under the Fourth, Fifth and Fourteenth Amendments to the Constitution to be secure in their person and property and to be free from unlawful interrogation, detention, arrest, and deprivation of property.  The complaint also includes state law claims for false arrest and imprisonment and malicious prosecution.

### A. Summary judgment standard

The entry of summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.  If a defendant can show the absence of some fact that the plaintiff must prove at trial, then the plaintiff must produce evidence, and not merely restate his allegations, to show that a genuine issue exists.  <u>Sartor v. Spherion Corp.</u>, 388 F.3d 275, 278 (7th Cir. 2004).  The Court construes all facts and makes all reasonable inferences in favor of the non-moving party.  <u>Magin v. Monsanto Co.</u>, 420 F.3d 679, 686 (7th Cir. 2005).

<u>B. Qualified immunity</u>

(1)

The Defendants contend that they are entitled to qualified immunity as to the federal claims included in Count 1 of the complaint because it was not clearly established that Sanders violated the Plaintiffs' constitutional rights.  Qualified immunity protects governmental actors performing discretionary functions to the extent that they are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Chaklos v. Stevens</u>, 560 F.3d 705, 710 (7th Cir. 2009) (citations

omitted).  Until recently, courts first were required to determine, while taking the facts in a light most favorable to the plaintiff, whether a reasonable fact finder could determine that the plaintiffs had been deprived of a constitutional right.  Id. at 711 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  If the plaintiff met its burden, the inquiry would then turn to whether the particular constitutional right was "clearly established" when the alleged violation occurred.  Id.

Earlier this year, the Supreme Court reconsidered Saucier and decided that "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818 (2009).  The Court determined that the judges of the district courts and courts of appeals could decide which of the two prongs of the qualified immunity test should be addressed first, based on the circumstances of the particular case.  Id.  "Deciding the constitutional question first is beneficial when courts are able to clarify or elaborate on the law in a manner that promotes its development."  Chaklos, 560 F.3d at 711 (citing Saucier, 533 U.S. at 201).  If, however, "the constitutional question

9

is so fact-bound that the decision provides little guidance for future cases," it may be best to proceed directly to the second step. Id. (quoting Pearson, 129 S. Ct at 819). Because the Plaintiffs' claims turn largely on whether it was reasonable for the officers to believe that they had probable cause, the Court finds that it is appropriate to consider the second prong of the test.

Qualified immunity protects police officers "who act in ways they reasonably believe to be lawful." See Wheeler v. Lawson, 539 F.3d 629, 639 (7th Cir. 2008) (quoting Anderson v. Creighton, 483 U.S. 635, 638-39 (1987)). "The defense provides ample room for mistaken judgments and protects all but the plainly incompetent and those who knowingly violate the law." Id. (internal quotation marks and citations omitted). Thus, the defense protects officers who make a reasonable error in deciding whether there is probable cause to arrest someone. Id.

After the defense of qualified immunity is raised, the plaintiff bears the burden to defeat it. See Wheeler, 539 F.3d at 639. "A plaintiff may defeat a qualified immunity defense by point[ing] to a clearly analogous case establishing a right to be free from the specific conduct at issue or by

showing that the conduct [at issue] is so egregious that no reasonable person could have believed that it would not violate clearly established rights." Id.

(2)

The existence of probable cause to arrest is an absolute defense to any claim under section 1983 for false arrest. See Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006). The Defendants allege that the existence of probable cause would also provide an absolute defense to the Plaintiffs' unlawful detention claims because their detention was part and parcel to their arrest. See Wallace v. Kato, 549 U.S. 384, 390 (2007) (noting that damages for false arrest claims "cover the time of detention up until issuance of process or arraignment.") (citations omitted). The Plaintiffs assert that they were detained for approximately two hours and were not free to leave. The Plaintiffs do not allege that they were detained following their arraignment. The record establishes that they were able to post bond soon after their arrest. Accordingly, the Court agrees that the unlawful detention claim is encompassed within the false arrest claim.

Probable cause to arrest an individual exists when "the facts and

11

circumstances within [the officers'] knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." Mustafa, 442 F.3d at 547 (internal quotation marks and citation omitted).  "The court evaluates probable cause not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer." Id.

Citing Devenpeck v. Alford, 543 U.S. 146 (2004), the Defendants note that the Supreme Court has determined that a lawful arrest exists when "the facts known to the arresting officers give probable cause to arrest," even if the suspect is ultimately charged with a different crime. See id. at 154-55. Thus, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Id. at 153.  "[P]robable cause to believe that a person has committed *any* crime will preclude a false arrest claim," though it would not bar an Illinois state law malicious prosecution claim based on another charge for which probable cause is lacking.  See Holmes v. Village of Hoffman Estates, 511 F.3d 673,

12

682 (7th Cir. 2007) (citations omitted).  As the court explained, "An arrested individual is no more seized when he is arrested on three grounds rather than one; and so long as there is a reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest was flawed."  Id.

The Defendants allege that, even if the Court were to find that the evidence was insufficient to constitute probable cause for taking the all-white deer, Sanders had probable cause to arrest the prior occupants of the black pick-up truck for illegal transport of a weapon.  Upon his arrival at the Dutton Street location, Sanders observed through the truck's windows two bows that he claims appeared to be in violation of the law, given that the bows were not secured in a case and did not appear otherwise to be rendered inoperable by a locking device.[3]  Sanders soon learned that Mutter was the owner of the black truck.  The Defendants assert that, at that moment, a reasonable officer would have believed that Mutter violated the law by

---

[3]The applicable law provides in pertinent part that it is unlawful for a person "to have or carry any bow or arrow device in or on any vehicle unless such bow or arrow device is unstrung or enclosed in a case, or otherwise made inoperable."  See 520 ILCS 5/2.33(n).

illegally transporting a bow.  They further allege that, after Sanders talked to Mutter and learned that he and Rice had been hunting together that day, Sanders could have reasonably believed that Rice violated the law by unlawfully transporting a bow.  By the time the Plaintiffs were arrested for the bow violations, each Plaintiff had been identified as the owner of a bow in the vehicle and Sanders had examined the bows, determining that they were, in fact, in violation of the law as he had suspected.

Based on the foregoing, the Defendants contend that Sanders had probable cause to arrest the Plaintiffs for the unlawful transport of a bow, thus precluding the false arrest claims.   The Plaintiffs allege no one consented to the search of the truck and, even though Sanders stated that the evidence of the bows was in plain view, he admitted that he did not have reason to arrest the Plaintiffs until such time as he could inspect the bows to ensure that they did not have some sort of locking device that would render the bows inoperable.  The Plaintiffs emphasize that Sanders admitted that, when he looked into the vehicle with a flashlight, he could not determine whether or not there was a locking device.  Based on that

testimony, the Plaintiffs assert that Sanders had no reason to arrest or even detain them.  They note that the search of the vehicle did not occur until after the interrogation.  According to the Plaintiffs, it was only when the truck was searched that Sanders had probable cause to believe that the bows were not properly locked.

The Court disagrees with the Plaintiffs' argument regarding probable cause.  The Plaintiffs appear to contend that there was not probable cause to effect an arrest for illegal transport of a weapon until the officers were 100% certain after searching Mutter's vehicle that no small locking device was located on the weapons.  As the Court earlier noted, probable cause requires significantly less than 100% certitude.  See Mustafa, 442 F.3d at 547.  In this case, Sanders had reasonably trustworthy information–his own observations–that would warrant a prudent person in believing an offense had been committed.

The Plaintiffs' reliance on Sanders's deposition testimony does not help their argument.  The testimony establishes simply that, although he immediately believed the Plaintiffs to be in violation of the law upon seeing

the bows, Sanders would not arrest them until he could inspect the bows to determine if there was some type of small locking device that might be relevant in determining the severity of the sanctions.  The Court finds that probable cause existed to arrest the occupants as soon as Sanders observed that the bows were not in a case and did not otherwise appear to be inoperable.  Accordingly, the Court concludes that the Defendants are entitled to summary judgment on the Plaintiffs' section 1983 claims for false arrest and unlawful detention.

(3)

The Defendants allege that they are entitled to summary judgment on the Plaintiffs' unlawful interrogation claims because even if the Plaintiffs' could show that the their statements were used against them in a criminal proceeding, the claims must fail because the Plaintiffs were not subjected to custodial interrogation.  The Plaintiffs assert that a reasonable man in their position would clearly believe that he was in custody.  The Plaintiffs did not believe they were free to leave.  Moreover, the state police officers testified that Plaintiffs were not free to leave.

16

There is at least a factual question as to whether the Plaintiffs were in custody when they were questioned by the Defendants.   However, the Plaintiffs have pointed to no case which would have put Sanders on notice that his actions violated their constitutional rights.  The Plaintiffs' point to Martinez v. City of Oxnard, 337 F.3d 1091 (9th Cir. 2003), wherein the Ninth Circuit observed that "[a] clearly established right, fundamental to ordered liberty, is freedom from coercive interrogation."  Id. at 1092.  In that case, the plaintiff alleged that the officer "brutally and incessantly questioned him, after he had been shot in the face, back, and leg and would go on to suffer blindness and partial paralysis, and interfered with his medical treatment while he was screaming in pain . . . and going in and out of consciousness."  Id. (internal quotation marks omitted).  The court concluded that those allegations, if proven, are sufficient to shock the conscience and violate the plaintiff's right to be free from coercive interrogation.  See id.

In this case, the most serious allegations are that Sanders spoke in a threatening tone and said that the "Bambi card" would be played.  The

17

Plaintiffs' allegations here do not shock the conscience like the ones in Martinez. The Plaintiffs have neither pointed to an analogous case nor otherwise established that Sanders's actions were so egregious that any reasonable officer would have believed that he was violating their constitutional rights. Accordingly, the Court concludes that Defendants are entitled to qualified immunity on the Plaintiffs' unlawful interrogation claims.

(4)

The Defendants next allege that Plaintiffs' deprivation of property claim must fail. "[P]olice may, without a warrant, seize an automobile parked in a public place based on probable cause to believe that the automobile itself is an instrumentality used in a crime, and thus constitutes evidence of the crime, and on probable cause to believe that the automobile contains evidence of the crime." People v. Davis, 93 Ill. App.3d 217, 225 (1st Dist. 1981). The truck was not returned to Mutter until November 11, which was three days after the white deer was shot.

According to the Defendants, the seizure of the Plaintiffs' property did

18

not violate their rights because Sanders had reason to believe that it was used as an instrumentality of a crime. They claim that Mutter's vehicle matched the detailed description of the truck used in the shooting of the deer. The vehicle was found less than one mile from the field where the white deer was shot and was seen parking soon thereafter. Accordingly, the Defendants allege that Sanders had probable cause to believe that Mutter's truck was used in the illegal shooting. Moreover, Sanders had probable cause to believe that the truck might contain evidence of the shooting of the white deer, such as the gun used or bullet casings. They contend, therefore, that the seizure of the vehicle from a public street was supported by probable cause.

Additionally, the Defendants allege that the bows and spotlight were properly seized. Because Sanders observed those items from a lawful vantage point on a public street, he had probable cause to believe that they were evidence of criminality. The transport of unsecured bows is itself a crime. Moreover, the spotlight could be evidence of the shooting of the white deer. The Defendants assert that Sanders had information that,

following the shooting, individuals were in the field using lights to search for the white deer.

The Plaintiffs dispute the Defendants' assertion that Mutter's vehicle matched the description of the vehicle involved in the shooting of the deer. Mutter's vehicle is not a dually. Moreover, according to one of the occupants of that vehicle, the dually that was observed near the scene was stopped by law enforcement officers soon after the incident. However, it is unclear from the record whether Sanders had at that time been informed that the vehicle which was alleged to be connected to the shooting of the deer was a dually. Sanders himself testified that he could not specifically recall who told him that the truck was a dually, though he suggests it was either Timothy Light, who witnessed the shooting of the deer, or Gearold Smith, the Pike County outfitter who Light contacted following the shooting. Because he was not a witness, Smith testified that his description was based entirely on what Light told him. Sanders also testified that he was "initially confused" regarding the detail provided in Light's description of the truck because it was completely dark by the time the officers arrived

at Dutton Street. In the statement that Light provided the day after the incident, he stated only that the truck in question was "possibly a dually."

Based on the foregoing, it is uncertain when in the course of the investigation that Sanders was told that the truck alleged to be connected to the shooting was a dually. Even if Sanders received such information at the very beginning of his investigation, however, it would not necessarily follow that probable cause was lacking. Eyewitness accounts are not always completely accurate. Moreover, Sanders evidently was somewhat skeptical of the description because of the time of day that the vehicle was seen. The description need not be 100% accurate in order for there to be probable cause.

The Plaintiffs' additional arguments do not establish that the Defendants lacked probable cause. The Plaintiffs emphasize that Light told Lentz that people were using a flashlight to look for the deer carcass. They contend that no reference was made to a spotlight. However, Sanders testified that Light told him simply that a light was used in the field. He was not specific as to whether it was a flashlight or spotlight. In Light's

21

statement to the police the day after the incident, he described only that a light was used in looking for the deer. The Plaintiffs' arguments do not negate the existence of probable cause. As the Court earlier found, moreover, probable cause existed when Sanders observed in plain view that the bows were not in a case and did not otherwise appear to be inoperable.

Because the Defendants had probable cause to believe that Plaintiffs had committed a crime, the Defendants are protected by qualified immunity as to the Plaintiffs' claims under section 1983 and are thus entitled to summary judgment.

C. State law claims

In Count II, the Plaintiffs assert state law claims for false arrest and imprisonment. They assert a state law claim for malicious prosecution in Count III.

To succeed on a claim for false arrest or false imprisonment under Illinois law, a plaintiff must show that he was arrested or restrained by police officers who did not have reasonable grounds to believe that the plaintiff had committed an offense. See Ross v. Mauro Chevrolet, 369 Ill.

22

App.3d 794, 798 (1st Dist. 2006) (citations omitted).  For the reasons already noted when discussing their federal claims, the Plaintiffs are unable to meet this standard and the Defendants are entitled to summary judgment on the false arrest and false imprisonment claims under state law.

The elements of a malicious prosecution claim include: "(1) the commencement or continuation of an original criminal or civil proceeding by defendants, (2) termination of the proceeding in favor of plaintiff, (3) the absence of probable cause for the proceeding, (4) the presence of malice on defendants' part, and (5) damages resulting to plaintiff." <u>Boyd v. City of Chicago</u>, 378 Ill. App.3d 57, 71 (1st Dist. 2007) (citation omitted). Malicious prosecution claims are disfavored and the absence of any element bars the claim.  <u>See</u> <u>id.</u>

With respect to probable cause as an element, "It is the state of mind of the one commencing the prosecution, and not the actual facts of the case or the guilt or innocence of the accused, that is at issue." <u>Ross</u>, 369 Ill. App.3d at 802.  The Plaintiffs' argue first that probable cause was lacking because "the state trial court specifically found Plaintiffs not guilty of the

taking and failure to retrieve, the offense for which they were arrested, cuffed, [and] booked by Sanders" and that the "state prosecutor dismissed the uncased bow charges against the Plaintiffs."  For obvious reasons, however, neither a court's not guilty finding nor a prosecutor's dismissal of a charge means that probable cause is lacking.  The Plaintiffs offer little more than this argument.

The Court further concludes that, even if it could be argued that probable cause was lacking at some point during the legal proceedings, the Plaintiffs have failed to establish malice on the part of Sanders.   In attempting to allege that malice was present, the Plaintiffs assert that several nights after the deer shooting, Sanders appeared at the Dutton Street residence to tell Plaintiffs that they could not talk to potential witness Gearold Smith, as that would constitute intimidation.  Sanders testified that Smith had told him that he felt threatened or intimidated when four individuals, which included the two Plaintiffs, showed up at either Smith's house or place of work.  Sanders stated that although Smith did not receive any threats, the visit "did not feel right."  Thus, Sanders informed the

24

Plaintiffs that it was illegal to communicate with a witness in any way to attempt to influence testimony.  The Court is unable to conclude that Sanders's actions exhibit malice.

The Plaintiffs further allege that the state's attorney was concerned that no gun was found.  It appears, therefore, that the state's attorney was concerned about the strength of his case.  Although that is a natural concern for a prosecutor, it does little to show that Sanders exhibited malice toward the Plaintiffs.  Moreover, the fact that the state's attorney proceeded to trial would seem to indicate that he at least believed that there was probable cause that the Plaintiffs shot the protected deer.

The Plaintiffs further note that Sanders authorized a memorandum to the state's attorney which pertained to a motion filed by the defense counsel.  The memorandum was quoted, in pertinent part, during Sanders's deposition as stating, "this however is not consistent with Mr. Leonard's usual performance, so I am very suspicious."  At his deposition, Sanders was asked to explain what he meant and said, "I have a very high opinion of John Leonard as an attorney, and normally when he puts together a motion,

25

in my experience it has always been crafted a lot better than what this particular one was." Sanders went on to say that he did not quite understand the motion. Although Sanders's wording seems a little strange, the memorandum provides no evidence of malice.

The Plaintiffs do not point to any other evidence of malice. Thus, the Court concludes that, even if the Plaintiffs could establish that they were prosecuted without probable cause, the Defendants' are entitled to summary judgment as to the malicious prosecution claim because the Plaintiffs have not established that Sanders exhibited malice.[4]

## IV. CONCLUSION

The is an unfortunate case of mistaken identity. Although the Court sympathizes with the Plaintiffs and what they endured, the Defendants are entitled to summary judgment on all of the claims. The Plaintiffs' false arrest and unlawful detention claims fail because Sanders had probable cause and is thus entitled to qualified immunity. Their unlawful

---

[4]Having determined that the Defendants are entitled to summary judgment for the foregoing reasons, the Court need not address their other arguments why summary judgment is appropriate.

interrogation claims fail because the Plaintiffs did not point to an analogous case that would have put Sanders on notice that he was violating the Plaintiffs' constitutional rights.   Additionally, the Plaintiffs have not established that the Defendants' conduct was sufficiently egregious so as to violate their constitutional rights.   The existence of probable cause also defeats the Plaintiffs' claims for unlawful deprivation of property.

The Plaintiffs' claims under Illinois law fail for similar reasons.   The Defendants are entitled to summary judgment because the Plaintiffs' cannot establish that they lacked probable cause and/or exhibited malice.

<u>Ergo</u>, the Defendants' motion for summary judgment [d/e 34] is GRANTED.

The Clerk will enter judgment in favor of the Defendants and against the Plaintiffs.

This case is closed.

ENTER: May 4, 2009

FOR THE COURT:

27

s/Richard Mills
United States District Judge